**Entered on Docket**
**September 20, 2017**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA




**Signed and Filed: September 20, 2017**

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>GOLDEN GATE COMMUNITY HEALTH, fka Planned Parenthood Golden Gate,<br><br>Debtor. | Bankruptcy Case No. 11-31703 DM<br><br>Chapter 7 |

**MEMORANDUM DECISION REGARDING TRUSTEE'S OBJECTION TO AMENDED CLAIM OF DIAN HARRISON**

On August 11, 2011, Dian Harrison ("Claimant") filed a proof of claim (Claim 82-1) ("Original Claim") for a lump sum of $205,500 for severance benefits pursuant to a written agreement dated January 1, 2000 with debtor Golden Gate Community Health ("GGCH" or "Debtor"). *See* Claim 82-1 at 1:24-26. Citing a subsequent written agreement dated August 11, 2006, she also asserted a claim in the lump sum amount of approximately $43,400.00 for health, dental and vision insurance premiums. *Id.* at 1. She amended the original claim on May 31, 2017 (the "Amended Claim") to assert that $12,850 of her claim was entitled to priority treatment.

On June 27, 2017, chapter 7 trustee Barry Milgrom ("Trustee") objected to the priority status of the Amended Claim. Trustee

also sought recovery of fees incurred by his professionals in objecting to the Amended Claim pursuant to the reciprocal attorney fee provision of California Civil Code section 1717. For the reasons set forth below, the court will sustain the Trustee's objection to priority treatment of certain amounts of the Amended Claim. That said, the court will deny the Trustee's request for reimbursement of his attorneys' fees in prosecuting the objection.

## I. Facts[1]

GGCH filed its chapter 7 petition on May 2, 2011. Approximately eleven years prior to the petition date, GGCH and Claimant entered into a Letter of Agreement under which Claimant was employed as the president and chief executive officer of GGCH. *See* Original Claim at 28-1 and Exhibit 1 thereto. In the Original Claim, Claimant asserted entitlement to severance and other employee benefits, but did not assert that any portion of that claim was entitled to priority treatment under 11 U.S.C. § 507(a)(4).[2] In the Amended Claim, Claimant contended that $12,280.00 of the amount set forth in the Original Claim is entitled to priority treatment.

In a response [Dkt. 359] ("Response") to the Trustee's motion for authorization to make an interim distribution to former

---

[1]The parties stipulated to the court deciding this matter on the papers. The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

[2]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

employees, Claimant stated that she became the CEO and President of Planned Parenthood Golden Gate (the Debtor's predecessor-in-interest) in 1996. *See* Response at 2:5-6. Pursuant to the employment agreement entered in 2000 (the "2000 Employment Agreement"), Claimant would receive nine months of severance pay in the event she was involuntarily terminated or became disabled for a 12-month period of time. *See* Response at 2:8-10. Paragraphs 7.1 and 7.2 of the 2000 Employment Agreement obligated GGCH to pay the nine months' severance as a "lump sum" upon her termination or disability. *See* Claim No. 82-1 at p. 5 of 21. A letter agreement entered into on August 11, 2006 amended the 2000 Employment Agreement to provide that Claimant would also receive health, dental and vision benefits through age 65. *See* Response at 2:10-12.

According to her Response, Claimant became disabled in March 2010 "for a period in excess of 12 months (her physician determined that she would be unable to perform her job duties secondary to her medical condition) and was entitled to the severance payments and other benefits (health, dental and vision)." *See* Response at 2:13-16. On March 26, 2010, Claimant made her demand upon GGCH to pay the severance and other benefits. *See* Claim No. 82-1, at ECF pg. 15-16, ¶ 18. In a state court lawsuit filed by Claimant on November 22, 2010, she alleged that she "<u>became entitled to receive her severance benefit</u> pursuant to Sections 7.1 and 7.2 of her Current Employment Agreement <u>and made a written demand on [Debtor] to make said payment through her attorneys on March 26, 2010</u>." *Id.* (emphasis added).

According to a communication by counsel for Claimant to



Case: 11-31703 Doc# 385 Filed: 09/20/17 Entered: 09/20/17 12:08:16 Page 3 of 10

counsel for the Trustee, the original severance agreement was "modified in or about June to September 15, 2010 such that eight months of severance was due during the priority period after September 1, 2010." *See* Exhibit D to the Declaration of Kevin ("Coleman Decn.") at Dkt. 370, ECF pg. 43. GGCH "paid one month of severance benefits ($22,869.00) on August 15, 2010 leaving the amount of eight months' severance due, in the amount of $205,500.00 ($25,687.50 per month)." *See* Response at 2:16-18.

II. Applicable Law

In asserting her priority claim, Claimant relies on section 507(a)(4), which identifies those wage and employee benefits entitled to priority treatment:

> (4) Fourth, allowed unsecured claims, but only to the extent of $10,950[3] for each individual or corporation, as the case may be, <u>earned within 180 days before the date of filing of the petition or the date of cessation of the debtor's business, whichever is first</u>, for –
>
> > (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or

11 U.S.C. § 507(a)(4)(A) (emphasis added). Thus, in order for a severance claim to be entitled to priority, it must have been "earned" within 180 days prior to the bankruptcy filing or a Debtor's cessation of operations. Debtor's operations ceased on or about February 28, 2011. *See* Coleman Decl., ¶ 2. Therefore,

---

[3] As of the petition date, the priority amount for section 507(a)(4) claims was $10,950.00. Pursuant to section 104(c), "[a]djustments [to dollar amounts] made in accordance with subsection (a) [providing for periodic increases of section 507(a)'s priority amounts] shall not apply with respect to cases commenced before the date of such adjustments."

the amount sought by Claimant must have been earned by her no later than September 1, 2010, for it to be entitled to priority.

III. Issues Presented

1. For the purposes of section 507(a)(4), did Claimant "earn" her severance and other benefits as provided in her employment contracts (i.e., at the time she became disabled and unable to work), or when the payments became due pursuant to a subsequent installment payment agreement with GGCH?

2. Is either party entitled to an award of attorneys' fees?

IV. Discussion

*A. Priority Status of the Amended Claim*

Under section 507(a)(4), a wage and benefits claim must have been "earned" within 180 days prior to the bankruptcy filing or a debtor's cessation of operations to qualify for priority treatment. As noted above, Claimant's severance claim must have been "earned" on or after September 1, 2010, to qualify for the section 507(a)(4) priority treatment. Claimant has admitted that the 2000 Employment Contract required GGCH to pay her severance in a "lump sum" upon termination or disability. Claimant further admitted that the conditions triggering her right to severance occurred in March 2010, and that she made a demand for payment of the full amount on March 26, 2010. Consequently, her claim for severance was "earned" in March 2010, well before the 180-day period in section 507(a)(4) commenced.

Pursuant to section 507(a)(4), an employee generally "earns" wages at the time that the services are performed or the

entitlement to the benefits vests, regardless of when the payment is made. *In re Idearc Inc.*, 442 B.R. 513 (Bankr. N.D. Tex. 2010); 9D *Am. Jur. 2d Bankruptcy* § 3308 (August 2017 Update). "If an employee's right to wages arises at a particular point in time but payment is deferred until a later date, the wages are 'earned,' for priority purposes, when the right to receive payment occurs regardless of when, if ever, actual payment takes place." 9D *Am. Jur. 2d Bankruptcy* § 3308, *citing Idearc,* 442 B.R. at 514.

Other courts have held that wages, salaries, or commissions of an employee or former employee of a debtor are "earned" under an employment arrangement, for purposes of fourth-level priority, no later than the termination of the individual's employment. *Belson v. Olson Rug Co.*, 483 B.R. 660, 665-66 (N.D. Ill. 2012) (former employee's back pay was "earned" on the date of his termination, at the latest, regardless of when his claim against chapter 11 debtor "accrued" or became "fixed and unconditional," and because his termination date was more than four years prepetition, the back-pay portion of the claim was not entitled to fourth-level priority as "wages, salaries, or commissions" earned within 180 days before the petition date). *Id.*

*"*Severance benefits are payments due to an employee as a result of the termination of the employee's employment or some other significant adjustment to or change in the employee's circumstances.*"* 4 Collier on Bankruptcy, ¶ 507.06[5][b] at 507–33–34 n. 23 and 24 (16th ed. rev. 2016) (collecting cases). "Only those severance payments *earned* within the appropriate 180-day period are eligible for priority. *If the employee is terminated before the 180-day period, any severance benefits due*

*to the employee will not qualify for priority[.]" Id.* (emphasis added). *"This is so even if the severance benefits were by contract payable within the 180-day period*." *Id.* (emphasis added), citing *In re General Info Servs., Inc.* 68 B.R. 419 (Bankr. E.D. Pa. 1986) (no priority for severance benefits payable within applicable period because the employee was terminated prior to that period and employee's right to payments were earned at that time).

Here, Claimant has acknowledged that her right to payment of the severance benefits vested in March 2010. The modification of her severance agreement to permit payment by installments through and after that date does not change the date of that vesting. *Belson,* 483 B.R. at 665-66; *General Info Servs*., 68 B.R. at 421. *See also In re ADI Liquidation, Inc*., 560 B.R. 105, 109 (Bankr. D. Del. 2016) ("[Employee]'s eligibility for severance accrued over time, but he earned or became entitled to severance only upon termination of his employment."); *In re Ellipsat, Inc.*, 480 B.R. 1, 11 (Bankr. D.C. 2012) ("[Employee] 'earned' his severance pay upon satisfaction of the conditions in his employment agreement entitling him to compensation upon termination."); *Matson v. Alarcon (In re LandAmerica Financial Group, Inc)*., 651 F.3d 404, 408-09 (4th Cir. 2011) ("an employee 'earns' the full amount of 'severance pay' on the date the employee becomes entitled to receive such compensation, subject to satisfaction of the contingencies provided in the applicable severance compensation plan"). Subsequent renegotiation of payment terms by Debtor and Claimant does not alter the date that the wages and benefits were earned.

Consequently, even in light of a modification of the 2000 Employment Agreement occurring as late as September 15, 2010, Claimant's claim does not qualify for priority treatment as a matter of law. The court will sustain Trustee's objection to the priority status of Claimant's Amended Claim.

*B. Trustee's Entitlement to Attorneys' Fees Under California Civil Code Section 1717*

The Bankruptcy Code does not provide a general right to recover attorneys' fees. *Heritage Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir. 1997). Nevertheless, a prevailing party on a bankruptcy law claim may recover attorney's fees if recovery is permitted under a state statute or contract. *Cohen v. de la Cruz*, 523 U.S. 213, 220–21 (1998); *Cardenas v. Shannon (In re Shannon)*, 553 B.R. 380 (9th Cir. BAP 2016); *Redwood Theaters, Inc. v. Davison (In re Davison)*, 289 B.R. 716, 722 (9th Cir. BAP 2003).

Under California Civil Code section 1717, "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." Cal. Civ. Code § 1717.

"Three conditions must be met before [section 1717] applies." *Bos v. Board of Trustees*, 818 F.3d 486, 489 (9th Cir. 2016).



Case: 11-31703 Doc# 385 Filed: 09/20/17 Entered: 09/20/17 12:08:16 Page 8 of 10

First, the action generating the fees must have been an action "on a contract." *Id.* Second, the contract must provide that attorney's fees incurred to enforce it shall be awarded either to one of the parties or to the prevailing party. *Id.* Finally, the party seeking fees must have prevailed in the underlying action. *Id.* If all three of these conditions are met here, Trustee may recover his attorney's fees from Claimant, "provided that [Claimant] would have been entitled to recover [her] fees had [she] prevailed.*"* *Penrod v. AmeriCredit Financial Services, Inc. (In re Penrod)*, 802 F.2d 1084, 1087 (9th Cir. 2015).

Here, while Claimant asserts a claim arising under a contract, it is not an action "on a contract." To the contrary, no part of this court's decision involves enforcement or annulment of the contract. Instead, the contract is relevant only in determining when Claimant's rights in her severance benefits vested for the purposes of section 507(a)(4). "[I]f the bankruptcy court [does] not need to determine whether the contract was enforceable," the objection to claim "is *not* an action on the contract within the meaning of [California Civil Code § 1717." *Bos*, 818 F.3d at 489. The Ninth Circuit further elucidated:

> [This construction of section 1717] accords with the common sense meaning of the phrase "on a contract" and finds ample support in our precedents. For instance, we have held that an adversary proceeding in bankruptcy court was not "on a contract" within the meaning of section 1717 where the action neither litigated the validity of the contract nor required the bankruptcy court to consider "the state law governing contractual relationships." *In re Johnson*, 756 F.2d 738, 740 (9th Cir. 1985). More broadly, we instructed that when "federal and not state law govern[s] the substantive issues involved in the [adversary proceeding]," we may not "award [ ] attorney's fees pursuant to a state statute." *Id.* at 741.



Case: 11-31703 Doc# 385 Filed: 09/20/17 Entered: 09/20/17 12:08:16 Page 9 of 10

*Bos*, 818 F.3d at 489.

Because this objection did not involve a determination of the enforceability of the 2000 Employment Agreement, but was instead an interpretation of governing bankruptcy law regarding priority of claims, California Civil Code section 1717 is inapplicable. The Trustee's request for reimbursement of fees is accordingly denied.

V. Conclusion

As discussed above, the court is sustaining Trustee's objection to Claimant's Amended Claim[4] and denying his request for attorneys' fees. Counsel for Trustee should upload an order stating that the objection is sustained, denying priority, allowing the Amended Claim as a general unsecured claim and denying the attorneys' fee request for the reasons set forth in this memorandum decision. Trustee should comply with B.L.R. 9021-1(c) prior to uploading the order.

****END OF MEMORANDUM DECISION****

[4]The court entered an order approving the Trustee's interim report on June 20, 2017 [Dkt. 367], providing that the Trustee would be given an opportunity to object to the substance and validity of the Amended Claim if the court determined that the claim was entitled to priority treatment. In light of this ruling, no further objections or hearings regarding this claim are necessary.



Case: 11-31703 Doc# 385 Filed: 09/20/17 Entered: 09/20/17 12:08:16 Page 10 of 10